Madam Clerk, please call the next case. Counsel, you may proceed. Thank you, Judge. May it please the Court, good morning, my name is Mark Slavin. I am appearing on behalf of my client, Romano Tile, counsel for the petitioner, Mr. Stack. The issue in this case is when the Commission found the corroborating witnesses' testimony presented in Mr. Jakubowski's case-in-chief was equivocal to reverse the arbitrator's decision denying benefits, but the record reveals no ambiguous or equivocal testimony whether such an event is against the manifest weight of the evidence. It bears repeating. It was the case-in-chief witness of Mr. Jakubowski where the Commission reverses the arbitrator's determination and says that testimony was equivocal as the basis for completely flipping the arbitrator's decision. We are talking about Mr. Karras. And so what happens is, in the Commission's decision, page 7, it says, We disagree after reciting the arbitrator's testimony. The arbitrator placed undue emphasis on Karras's equivocal testimony, ignoring the balance of testimony. The next page they repeat the same language. Equivocal testimony. Well, there is no equivocal testimony, and that's why this case rises to the level of manifest weight. It is an infraction. Let me slow you down just a little bit. We review the Commission's decision, as you well know, not the arbitrator's decision. Okay? So if the Commission feels that maybe the alleged testimony, inconsistency in Karras's testimony reveals he's uncertain when he last worked as opposed to simply making something up, why can't the Commission make that finding? Well, they can make that finding, I agree. But in this instance, Your Honor, this is a case that goes smashing through the manifest weight standard. Page 72 of the record. It is all about Mr. Karras's cross-examination that lasts a page. Just a couple of questions for you is the question. You stated that you worked for a monotitle for approximately 20 years. Answer, yes. When did your employment end with them? Answer, I don't know. That sounds equivocal. Correct. And that's why I'm going to repeat just the last of the cross-exam, because when they say unbalanced, that little sentence is this whole case. I don't know. Last job I did for them was, I think I did one more. We had one more job after the DSW store. Question. You would have ended in approximately 2011? Answer, yeah. In fact, I think it was actually January. I worked up until January, and then in February, then I was laid off. Question. You were laid off from the Romano Tile in February of 2011? Answer. I'm trying to think what days were. Yes, because I went for the hernia surgery in February of this year. Question. And why was your employment terminated? Answer, they just didn't have enough work. Your Honor, to your point. He says repeatedly, I think this. I'm not sure. I mean, he goes through all this, and I think I worked a job after the DSW shoe store, which was the job where this injury occurred. It's better for respondent than that, Your Honor. It's an epiphany. He goes, I'm clear. In fact, he uses those words. He says I'm clear? He says, in fact, I think it was actually January. I worked up until January, and then in February, I was laid off. And then he goes on to say, I'm trying to think what the days were. Yeah, because I went for the hernia surgery in February of this year. That is a clear, almost epiphany of a statement of fact. What difference does it make? I mean, you know, the commission doesn't owe any deference to the arbitrator, right? I agree. The commission, they decided de novo, every case, facts, everything, right? Yes. And so they look at these facts differently, and they say this, you know, this testimony by Karras on cross-examination makes no sense in the context of all the other evidence in the case. That's what they said. You know, the medical records are consistent. His testimony is consistent. The arbitrator was wrong. We're going to award benefits. That is what your statement is correct. That's what they did. But why is this case different than all others that become before us on the facts of the record of this case? It's because they're going out of their way to say it was equivocal. And when one reads this case, is there no other interpretation available? But the respondent just kind of got a gift here on cross-examination. Out of the blue, this guy, you know, has what you call an epiphany. Well, I have to disagree with you respectfully, and that goes to one of the points being made in opposing counsel's brief, saying one of the things that you should construe against the respondent is we never called the president. And as his brief goes on, because we were in control of that testimony. Don't get all worked up about that. Well, I have a simple question for you. Forget about Karras's testimony. Is there evidence in the record absent Karras's testimony that supports the judgment of the commission? Yes or no? Yes, there is. In answer to that question, we affirm it. Well, that's because that's the central issue of the question. Is there a sufficient amount? Yes. But does this case go against the manifest weight? I say when the commission comes out of whole cloth and says this is an equivocal testimony, I'm the face when one reads this objectively and fairly, there is no equivocation. I mean, she's making an argument over something that's almost totally irrelevant. What is totally irrelevant? I'm sorry. That they said it was equivocal when it wasn't equivocal. They can support their decision without Karras's testimony. They could have called him an outright liar. Or they could have said, you know, we just think he had a bad day. It doesn't make any difference because the remainder of the testimony in the record supports their conclusion. Let me put that another way. What if you would have called Karras and Karras would have got on the stand and said, I wasn't even working with him that day. I'd already left. You know, he says I was working with him. This never happened. And the commission says, you know what, we believe the claimant. They can do that. I think that's an important difference I wish to argue for you. It's the case in chief. When he, petitioner's attorney, puts on his case and calls his witnesses, it either fails or it rises. You know, if it was on my case in chief and I put my Karras on there and it crumbled on me, I have to – I wouldn't be here. Couldn't be here. How could I argue that it's against the manifest witness? But you're not really answering the question, because does this case stand or fall on Karras' testimony? What everybody is saying is it does not stand or fall on Karras' testimony. You say the commission erred when they made this finalized testimony. They're saying throw that out. Find Karras to be a liar. Does it really make a difference when you've got emergency room reports, you've got physical manifestations, Dr. Gunger diagnosed it. What's the difference what they did with Karras? What's the difference? The difference is that the commission's decision goes on about we disagree, placing undue emphasis on Karras' equitable testimony. They don't care what the – look, let's get a couple of facts in here. This guy claims to have been injured on March the 31st, 2011, didn't he? Specific date, yes. He went to the emergency room at 2.41 a.m. on that day. He claimed a left knee pain. The examination of the emergency room reveals edema and bruising. He's diagnosed with a left knee sprain and possible internal derangement. Dr. Gunger diagnoses him with left knee trauma and osteoarthritis and opines that the condition was – his injury at work aggravated a previous knee condition and emphasized the fact that prior to March the 31st, he'd been able to perform his work activities without complaint or treatment. That's in the record. That supports what the commission did, and we don't have to rely on the reasons given by the commission, do we? You have to rely on the reasons given by the commission to determine if it's against the manifest way of the evidence. Excuse me. We do not have to rely on the reasons given by the commission if there is sufficient evidence in the record to support their determination. I just gave you the sufficient evidence. I'm in agreement with you on that correct standard that you announced. But when Jack Hubowski says I was in the genuflect position and my left – I was reaching behind me and my left knee popped, and my witness is here, it's Karras. And Karras parrots and says the same thing in the case in chief, and then Karras says on cross-examination, you're right, I stopped working for this company two years before that – two months before this accident. If Karras is a liar, does that make the complainant a liar? Yes, because he said he was there right next to me. Yes. The petitioner testified. That's my witness. So Karras wasn't there. So counsel correctly would bring Karras in, as he does. We have evidence. We know that Karras isn't there that day. We cross-examined, and he quickly gave it up. You have evidence you know he wasn't there? Did you admit any of that evidence? No. Okay, then you're talking about something that's not in the record, right? No. Do I? Yes, you're right. There was no reason to introduce him. You made no record of any corroboration of Karras' testimony that he was not there. There's nothing else in the record besides his testimony. His testimony, which is huge. That goes to the point that I was trying to make earlier, Justice Hoffman. You said a little bit overly passionate, which was about our duty to present the President. Who was overly passionate, me or you? I was. Okay. I was. No, I was. All right. And then the burden is on us. It could be construed against us because we didn't produce the President, and they rely on the other. That's nonsense. Good. Stay away from the issue. It's silly. Good. Thank you. Don't waste your time. But for the same reason that we don't have to produce the evidence of him not working that day because he said it. You're right. I wasn't working. There was nothing equivocal about that. Well, you would agree with me, wouldn't you, that your argument would be a little different. It would be a different case if you had produced time records or whatever showing that Karras could not have been there. With all due respect, not, because he said I wasn't there. And I have a clear record. Remember? Remember that the claimant said he wasn't there? The claimant says I'm talking about Karras. Right. No, I understand that. The claimant says Karras was right there next to me. Yes. Karras says I wasn't there. Karras says I wasn't there. So does that mean Karras wasn't there? Actually, Karras doesn't say I wasn't there. He testifies he was there and heard the pop and everything. And then just on the issue of when he left the company, he does give equivocal testimony. He says, I don't know. I'm not sure. And then he says, oh, yeah, I think I had some hernias. He says, I think I had hernia surgery in February. I would submit that that is a clear manifestation of understanding that he wasn't being truthful and that when the commission goes out of its way to say undo emphasis, it's a hard punch to the stomach. And as a hard punch to the stomach, does it rise to the level of manifest weight? I submit it does. But, of course, you know, that is in your discretion during your discussions. I reserve whatever remaining time for rebuttal. Thank you. Thank you, counsel. You may have time for reply. Counsel, you may respond. Good morning. May it please the Court. My name is Sean Steck. Counsel, I represent Mike Jakubowski. I'm getting, I guess, to the root of the matter. At the end of the day. While you do this, you've been going back and forth on the same issues for a long time. Give us your assessment of whether and what impact Karras' testimony, credibility and the findings of the commission have to do with it, okay, whether or not it can be thrown out. And then is there sufficient evidence in the record to support the commission's decision? Those are really the only two issues, okay? Okay. That's all you've got to do. To the second issue, whether there's sufficient evidence. Absent Karras' testimony. Absent Karras' testimony. It is our position, and I believe the record fully supports that it is supported. And, Your Honor, Justice Hoffman had pointed out, as have you, Justice Hudson, you know, we have the Del Nor Hospital records, the history taken by Dr. Del Mundo, which is, you know, at 3 o'clock in the morning, several hours after the incident has occurred. We have the history from Barrington Orthopedics on April 6th, just a couple days later. We have the history from Dr. Cherub that same day. We also have the petitioner's testimony that he reported to his boss, Mr. Romano, that day. So, of course, if it didn't happen that day, then what would Mr. Romano have done? And Justice Hoffman, I understand that this is a side issue with respect to whether or not they called him and whether that should be construed against them. But what I would point out is that they could have called him to say, this man did not work on that day. And they did not. And he testified, I reported this to the owner of the company on the day it happened. That's significant. So we not only have the history, we not only have the report to his employer on the day of the incident, but then we also have the objective medical findings at the hospital right after the injury and a week later, which show that there was an acute trauma to the knee. And all of those things together, I believe the Commission can find, absent Karras' testimony, that the record supports a finding of an accident on March 31st, 2009. So we have in his position, which basically is, hey, the Commission clearly got it wrong in their assessment of the impact and weight of Karras' testimony. Therefore, we win because it's against the manifest weight of the evidence. What's your response to that argument? No. We take the manifest weight is obviously all of the manifest weight, okay, not just the testimony. And I think that's what the Commission had a problem with when it read Arbitrator Kinnaman's decision. She said, essentially, we're throwing the baby out with the bathwater. Karras seems, you know, to say that he wasn't there. Therefore, the petitioner is not credible and the accident couldn't have happened. And I, it is our position that this Court and the, can review the Commission's decision and see if the Commission did what it is appropriately tasked to do. Look at the entire record and determine whether or not there's enough evidence to support the decision of the Commission. I say there is. I, that aside, I did try the case and the counsel didn't, didn't have the privilege to be there. But, you know, seeing the witnesses and hearing the testimony, I have been asked, you know, why didn't you follow up? Why didn't you ask follow-up questions? It was apparent from his testimony, his testimony on direct and then his testimony on cross, that he knew the incident happened. He didn't know when it happened. And I don't think any questions I could have asked or anyone else could have asked would have really made that much clearer. In his direct examination, he testified, as Your Honor pointed out, very specifically about the mannerism of the injury, where he was, what he heard.  He just doesn't remember when it happened. But even if we totally disregarded his testimony completely, there would still be sufficient evidence in the record. More than enough, Your Honor. If there aren't any more questions, thank you. Have a good morning. Thank you, counsel. Counsel, you may reply. In the case in chief, the question was asked on page 46 of the record. Question, who were you working with? Answer, Jim Karras, record indicating. He was pointing. He was making a very specific acknowledgment of the man that was next to him. And it turns out, I submit to you, that the record will, against the manifest weight, does not support that position. And therefore, the record on its whole, as found by the arbitrator, should be reversed. Thank you. Thank you, counsel. This matter has been taken under advisement, written disposition shall issue. Court will stand in recess until 1.30.